Good morning, Your Honors, and may it please the Court, David Lospaluto for the Appellant and Plaintiff Deutsche Bank. I do wish to reserve two minutes of rebuttal. Thank you. Your Honors, we addressed a number of issues in the briefing. I'd like to focus our attention on two of them in particular. Number one, the notice and prejudice issue, and number two, the due process issue. Turning to the first issue, Your Honors, the notice and prejudice issue, the HOA lien foreclosure sale should have been void as to the deed of trust because of a failure of notice to the deed of trust beneficiary. The District Court required a showing of prejudice, but this was error. Deutsche Bank was not required to show prejudice or prejudice was established as a matter of law because, number one, the HOA did not send any of the notices of the lien foreclosure sale to the deed of trust beneficiary, and then number two, as we know, the beneficiary had no notice whatsoever of the lien foreclosure proceedings. I have three topics I'd like to address with respect to this particular issue, Your Honors. One is an analogous situation. Two, I'd like to address the briefing and what the District Court said, and then three, I'd like to anchor it with the cases that are most on point on this issue. Number one, Your Honors, an analogous situation. You know, a defendant in a lawsuit gets sued, doesn't get served, gets no notice of the foreclosure. We wouldn't allow judgment to be entered against that defendant and then have that defendant force them to have the burden later to come back and prove they would have won the case. We would not allow that judgment to be valid. If the notice of default and the notice of foreclosure sale were recorded, how can we say there was no notice at all? Yes, Your Honor. That's because of the way that the Nevada or any states really in recording statutes are, is that the lender or the beneficiary is not required to be sitting there checking the records. Those are only notice. That's only constructive notice, which is not sufficient under the statutes or under due process, and Do you concede constructive notice because of the recordings? No, not necessarily, Your Honor. Why not? Well, it really is constructive notice as to those who later get assignments and who take their interest later during that process. And so, in other words, the beneficiary is not required to be checking the records daily, and that constructive notice is not sufficient as a matter of law to give notice of the HOA lien foreclosure proceedings. Not sufficient for notice, not sufficient for due process. It's the same as if I were foreclosing on a mortgage. I can't simply record it and then foreclose a homeowner and shut them out and say, well, you had constructive notice. You should have been checking the records. Number two point on this, Your Honor, is I wanted to address the briefing and what the District Court said. I don't think you made an attempt below to show prejudice other than your claim that it's Well, I think what we argue, Your Honor, is that we did not have the prejudice inherent or you do not have to show prejudice. Well, I understand. Assuming you're wrong and you do have to show prejudice, hypothetically assume that, did you do anything below to meet that requirement other than your argument that it is, if you will, self-evident from the difference between the actual value and the sale value? That is our argument, Your Honor, and that is what is at stake in the resources group and the title insurance and trust, which was actually my third point under this particular topic, which I'll turn to now. You know, the resources group case did not require notice and actually said notices, I'm sorry, did not require a showing of prejudice under circumstances of this case and actually affirmed a prior 1981 Nevada Supreme Court case on that same point. At page 447, affirming title insurance and trust v. Chicago title says, as to cases where the person entitled to notice received no presale notice at all, so the prejudice is not going to apply to that particular scenario. And specifically citing that same case as, at 447, absent notice from some other source, failing to mail the statutorily required, in that case, the notice of default. Is there any evidence that if MERS got notice, they would have paid off the outstanding HOA assessments or violations? I think typically what MERS does in those circumstances, Your Honor, as these cases show, is that it then sends that notice along to the proper... But there's no evidence in the record that anyone would have cured the default, right? I don't have any evidence on that, Your Honor. That is true. So what are we to make of this, of that at this stage? We just have to presume prejudice from that? And I, you know, most cases, at least some of the evidence is tendered that said, oh, of course we would have paid this off. Is your argument that you would produce such evidence on summary judgment? I'm not aware of such evidence, Your Honor. Our argument is we did not need to show that. Under Resources Group and under Title Insurance and Trust, both Nevada Supreme Court cases that say where no notice was mailed and the beneficiary or lender didn't have notice otherwise, and there was no notice otherwise in this case, that was undisputed in this case. And that's because, as in quoting Title Insurance and Trust, the Resources Group case says that this notice requirement, sending it out, reflects the legislature's judgment that a person facing foreclosure should have a reasonable opportunity, not that it would have done so, not that it retroactively goes back and shows what its predecessor or predecessor's predecessor would have done, a reasonable opportunity to cure a default or deficiency before the property may be sold. And that is important policy, Your Honor, that they be given that. And that under these non-judicial foreclosures, there needs to be some sort of control that says they need to send out that notice. They shouldn't be putting the burden on the party who never even got sent notice to years later discover it and come back. Can we find out, are you a successor in interest just to MERS or also to the lender, Murray? Yes. To the lender, Your Honor. Both. Yes. Yeah. So we own everything as to the deed of trust and the loan. Yeah. So that was all assigned to us. Can we, because I know your time is limited, go to your due process argument? Yes. And my question for you there is, what's the state action? Yeah, this is a state action, Your Honor. Basically under the Ninth Circuit precedent, you know, state action as we see in, you know, the Bourne case is that, you know, a statutory scheme and a set of cases that allow wiping out and extinguishing a deed of trust without any notice to the lender or the deed of trust beneficiary would violate due process. The courts are set up in such a way that they ought to, that they have to protect that. So basically what I'm saying is the case law as it exists, at least under this district court's ruling and what's allowed, you know, what is allowed. But are you challenging the statutory scheme or are you challenging a private foreclosure sale by private parties? So it's different than Bourne Valley, right? That was challenging the statutory scheme. But it's under a scheme that would allow, not the entire statutory scheme, but as interpreted by the courts to require prejudice, to say that you don't get notice, but you still get wiped out. You know, the beneficiary had no notice. And there's this mere gesture at notice toward the lender and the homeowner as well, where the court allows that to wipe out your deed of trust. If that's not, that's not, that's no longer private. Are you saying, I just want to, I'm not totally clear. You're not attacking the statutory scheme because the scheme requires some notice, but here there was no notice and therefore the statutory scheme was not carried out because of the failure of who to require notice. Well, the court doesn't require notice, but the statutory scheme itself seems to be allowing mere, I mean, as interpreted by the courts, appears to be allowing this mere gesture at notice toward the homeowner and the lender to suffice for notice, where they year after year. So you're saying what makes it state action is the interpretation that has been given by the courts to the notice requirements of the statutory scheme that renders it a violation of due process. I believe that's correct, although I suppose the statutory scheme could require some sort of something besides mere gesture. You know, the problem is the statutory scheme seems to allow simply sending out notice and getting it back, sending out notice to the same wrong address, especially here where you know, statutory agents that could have been served, and due process does require reasonable inquiry. That's under the Jones v. Flowers case under the U.S. Supreme Court where tax lien foreclosure, you know, notice came back there and was allowed to wipe out a homeowner's interest. I think the same matter happens here. I think that we need to be careful with these foreclosures, these non-judicial foreclosures. I do see I'm running out of time, Your Honors. I didn't want to exceed my time. I didn't want to reserve that chance. We'll give you some time for rebuttal. Thank you, Your Honors. Hold on one second. I think we need to put 10 on the clock. We're going to split the time for you, too. I'm sorry, thank you, all right. And Your Honors, I would be, based on what Mr. LaSalle does share with you today, I would be willing to convey my two minutes to Ms. Hanks. Okay. We'll see if she can wrap up in eight, and we'll give you two if you want. Very good. Good morning. May it please the Court, my name is Karen Hanks, and I represent SFR Investments Pool One LLC. We have asked this Court to affirm on alternate grounds. We brought a motion to dismiss early on saying that Deutsche Bank's claim was time-barred by the statute of limitations. At that time, the district court judge believed a five-year statute of limitations governed. Since that time, Thunder Properties has issued, and the Nevada Supreme Court has said four years governs. Now, they'd also, though, said, well, it has to be an action to repudiate the lien. So that's the secondary part. We know the four years is definitely here in the sense that the foreclosure deed recorded on March 15, 2013, and Deutsche Bank did not file their complaint until October 11, 2017. We are posturing, and this is the first case before any panel in Ninth Circuit that would hear this issue, is that the systemic universal repudiation by SFR, well before this sale and well before the foreclosure deed recorded for this property, was repudiation. I did file a motion, Your Honor, to... What date are you saying is the accrual date? It would be the date the foreclosure deed recorded in SFR's name. So once the bank was on notice that SFR purchased this particular property, coupled with the fact that leading up to that sale, SFR had countless actions already pending against that particular bank. Here, Deutsche Bank. Deutsche Bank knew that SFR had a universal position. But there's a Ninth Circuit case that's saying the deed being recorded does not constitute the accrual date. Right. But that was only just the basis of it being recorded. Gracemont was not a party that made this argument. I argued Gracemont. That purchaser in that case did not have the footprint that SFR did. It had no prior litigation filed against any lender. SFR is different, so I do want to clarify that. Gracemont panel did not consider this argument, Your Honor. It was only just to say the foreclosure deed itself. What I'm arguing is... But what is your exact accrual date? The exact accrual date is the foreclosure deed recording because SFR is the owner. Because the foreclosure deed shows that SFR is the owner. That's why. So because the bank was on notice at that time that SFR was the owner, that's the date it knows it is dealing with an investor who repudiates its lien. One of the very first actions... I thought that in Gracemont, it was both the recording of the foreclosure deed, but also when, I guess, the new purchaser didn't make payment, when the first installment payment was due and they didn't pay. That was the secondary argument. And we previously said that's not good enough. And you're right. But you're saying it is. No, I'm not. That's the secondary argument we made in this case. When I filed my answering brief, Gracemont had not issued yet. So we were putting that argument in all of our briefs up to that point. What I'm arguing is, when the foreclosure deed records, and you have SFR being the purchaser, and SFR had already filed its first litigation action as early as December 14, 2012. We had an earlier one December 5, 2012, and even earlier one in November of 2012. And then we have subsequent actions against this very bank. I filed the motion, Your Honor. I haven't gone through the entire portfolio of SFR, but I can represent to you that SFR had 589 lawsuits related to these properties. That's how big this portfolio is. And I listed just eight cases, all in 2012 and 2013, that were against Deutsche Bank. I guess I'm still unclear. What is your repudiation of the lien? And what is the date you repudiated the lien? It's the date that we became the purchaser, coupled with the fact that we had actions prior to that sale. That's what we're saying. The fact that we had filed lawsuits repudiating deeds of trust. Our position was universal. It was blanket, and it was globally the same and always the same. Every time we purchased a property at an HOA foreclosure sale, we extinguished the deed. Okay, so give me all the dates, other than the foreclosure deed recording. What are the other dates that you repudiated the lien, so I can look at it in the record? Your Honor, I would be asking you to take notice of the cases that we filed against Deutsche Bank. So in our motion to add that to the record, I have various case numbers. And so I have an... Wait, you're saying lawsuits not involving this property? Correct. Yes. That is the repudiation of this lien? What authority do you have for that? I've never heard that proposition. Your Honor, there's... Because I'm looking at all the dates in this case. You've got the HOA recording notice of lien January 14, 2009, mailing the borrower notice of delinquent assessment September 28, 2009, mailing the borrower letter stating that they're going to proceed on foreclosure action October 1, 2009. I mean, I've got all these dates, and you're saying, don't look at the dates of this case. Look at other lawsuits involving other foreclosed properties. And that's the notice that the party here should have received? Yes. Coupled with the fact that on the date of March 15, 2013, when the foreclosure deed recorded and Deutsche Bank took notice that SFR was the purchaser. So what are those? Okay. So then give me the authority supporting your argument. I have the case that I cited in the brief in terms of the Nevada Supreme Court said a bank does not need to consistently prove that these... And what case is that? And how is that consistent with Thunder Properties, which says it has to be something more? That is the something more. Something... That is the something more. What? That you filed lawsuits involving other properties unrelated to this property? Yes. Because every... Yes. Because the issue was exactly the same. The deed of the HOA foreclosure sale extinguished the deed of trust. Deutsche Bank is not in the dark about our position. I don't have to come... I should not have to come and tell you every single time when I've already had a universal global policy. I have eight cases before this deed is even recorded or at or near the time... And where are these properties? Are these North Las Vegas properties? All of them. Or all over the country? No. You're saying they should look at all of your lawsuits all over the United States?  Only all of them are all in Las Vegas, Nevada. All of these cases are all in Las Vegas, Nevada. And so they should be trolling superior court dockets in Las Vegas to find where you're a litigant and who have you sued on which properties? No. I'm taking their cases. I'm saying we sued them. The cases I'm listing here are the eight cases where Deutsche Bank was a named party, where we sued Deutsche Bank. I'll give you an example of one. Sued them for what? A foreclosure sale. We bought a property at a foreclosure sale. They're all the same lawsuits. We bought a property at a foreclosure sale and we're saying your deed of trust was extinguished by virtue of the super-priority lien that's governed by Chapter 116. These cases are exact mirror images of every other case we've brought. It's the same as this case. So I'll give you an example, Your Honor. But do you know the contours of Thunder Properties has not been really litigated? That's where we are. And that's where this case is. So why shouldn't we remand this to the district court to consider your argument in the first instance? Absolutely. I have no problem with that, Your Honor. I mean, it's very difficult to decide as a matter of law here all the facts you're asserting in support of your claim here. And I'm skeptical of it, but you're agreeable to remand on that issue. I would agree with you. And we had several panels when we had cases pending at the Ninth Circuit while we were waiting for Thunder Properties. I have had several panels remand. This particular panel did not send that letter or ask that question, so it didn't come up. But I would agree with you. And we are making these arguments, and courts are granting us discovery, and granting us discovery so that we can show this universal repudiation. And I just want to give one example, and I would agree with that. Let us remand. Get all these facts out there. Well, we haven't talked about it yet, so I'm just asking. I understand. But I would agree with you, Your Honor. Because at that time, the district court was applying a five-year, so we could not marshal this evidence, not to mention we didn't know Thunder Properties was going to set that standard. But I would just highlight, Your Honors, all the cases I'm listing here, particularly I have the 813-683-597C. That case was a June—excuse me, if you'll just give me one second. I know my time is running out. It was a June 14, 2013. So that's just a few months after the foreclosure deed recorded in this case. That could be another trigger date. It was against Deutsche Bank. We took them to a writ to the Nevada Supreme Court and got an injunction of a foreclosure sale because they were trying to foreclose on a deed of trust that we said was extinguished by an HOA foreclosure. So I apologize for not making that clear, but every case I cited in our motion and every case filed by SFR, it's in Nevada, it's an HOA foreclosure sale, and the position was clear. Your deed of trust was extinguished. It's the same exact case over and over and over again, and it's the same position. That's why we're saying that's the notice. That's the action that Thunder Properties is referring to. I cannot envision more action. I don't know what more SFR could have done to show the world it was disputing these liens. Your time has expired, but if you want to make a couple more points, I'll allow it. Your Honor, I don't have any more points. We were asking for the affirming on other grounds. If you want me to deal with the notice, I could. Mr. Hastings, do you want to add anything? We invited you here, so we don't want you to... I would. I think most of the issues that would then be hammered out by the court and parties wouldn't really involve the association as the claim is pending. The association has never maintained that it was a proper party to a quiet title dispute in this case, as you can imagine, and the other claims, I shouldn't say irrespective of what... What do you think about SFR's universal repudiation argument? I think it's compelling. I think that there's no question that Deutsche Bank was on notice of what SFR... What authority would you support for that? I don't have authority for that, Your Honor. I'm just saying that if Deutsche Bank was sued multiple times before this case happened and was told multiple times that an HOA foreclosure sale would extinguish their interest, they would have been on notice of that as a potential issue. It seems in the abstract to me a little strange that statute of limitations as opposed to latches should turn on what would be a shifting standard in every case, so that supposing you would only file two such lawsuits instead of 20 such lawsuits, would that been sufficient to put Deutsche Bank on notice? Perhaps. You know, I can't... This wasn't my argument, so I can't speak necessarily to the strengths and weaknesses of where... Just filing a lawsuit doesn't mean that a court would agree with SFR's position, so I still don't see how that's Deutsche Bank's notice, right? They may know that's your position, but they don't know that legally that that would be honored by a court and that that would extinguish their deed of trust, right? Well, for purposes of statute of limitations, I don't know... I'm not sure that that's the requirement of having a court finding, and that would, I guess, be my... But how would they definitively know that that extinguished their deed of trust, just that someone claiming to be a bona fide purchaser asserts so in a lawsuit? They would not. Yeah. Okay. Thank you for your argument. We'll hear rebuttal. Good morning again, Your Honors. We know that under Thunder Properties, triggering requires something more, and this something more appears to be something that has to come after and has to be with respect to displacement as to this particular loan, not simply saying, you know, we've sued a number of entities or we've sued even Deutsche Bank before on other completely unrelated properties with different factual scenarios. I will say, you know, failure to pay on the loan or the sale itself are not sufficient, so they want to lead up to the sale and now buy into the sale itself again, which Thunder Properties already rejected as a trigger date. So what is the trigger date? Yeah. I mean, the trigger date ought to be discovery, Your Honor. There's cases that I've cited in our briefing on that, that the discovery rule really ought to apply to these sorts of matters, not a suit against Deutsche Bank on an unrelated property. And I will say, Deutsche Bank didn't even, as of the date of the sale, didn't hold its interest. And so you can't say, well, we sued Deutsche Bank before, and as of the date of the sale, we'd sued Deutsche Bank. Well, Deutsche Bank doesn't take its interest until later. So what's Deutsche Bank supposed to do at that point when it doesn't even have that interest? There is case law, Your Honor, that the discovery rule is really what applies to these sorts of cases. That really was not raised. Well, we raised it as an issue, but it was not, there was no evidence put forth as to, oh, you discovered it within the window after a trigger date. The problem was they couldn't establish, they really can't establish a trigger date that was before four years of the suit itself. And so, you know, as a result, they've had that opportunity. There's been nothing set forth on that in this case. Do you stipulate to remand as well? I don't see any reason to remand, Your Honor. They've had their opportunity. And what they've talked about here is cases, all they've presented here is cases against Deutsche Bank in the past, not something challenging as to this property. And regardless, Deutsche Bank would not be relevant on that matter because Deutsche Bank didn't have its interest at the time of the sale. They're still trying to use the trigger date of the sale, which Thunder Properties has rejected. Thank you, Your Honor. Thank you. Thank you all for your arguments today. The case is heard. We submit it for decision, and we will
judges: THOMAS, KOH, Rakoff